SOMMERVILLE, J.
One question only is presented in this case, the right of the city of Shreveport to determine by a vote of its qualified electors the question as to whether licenses for the sale of intoxicating liquors should be granted or withheld within the limits of the municipality where Caddo parish had, more than a year previously, voted against the issuance of licenses throughout the parish.
In June, 1911, an election was held throughout the entire parish, under authority of a resolution of the police jury, for the purpose of taking the sense of the qualified voters of the parish as to whether the sale of intoxicating liquors should be licensed or not. The result of this election, as also that of a similar election which had been held in 1908, was against the issuance of licenses for such purpose.
Upon a petition presented to the city council January 28,1915, demanding that the question of licensing the sale of intoxicating liquors be submitted to the people of Shreveport, an election was accordingly ordered, and was held on March 4, 1915, resulting in the electors decreeing by a majority vote that licenses for such purposes should issue. The returns of the election having been promulgated, the police jury then sued out an injunction to restrain the city from issuing such licenses.
The petition in this case proceeds on the assumption that Act 221, 1902, p. 451, which act amends and re-enacts sections 1211 and 2778 of the Revised Statutes, embraces the law upon the subject-matter of local option, that is, the determining by a subdivision of the state of the question as to whether licenses should be granted or withheld, and that the action of the city and of these electors was in violation of the law, which provides that after a parish has once voted against the issuance of licenses, they cannot be again issued, except upon the order of the same authority, and that cities and villages within such parish are without power to determine for themselves the question of prohibition.
The city filed a motion to dissolve the injunction upon several grounds, which was overruled. The city does not prosecute an appeal from the adverse ruling. The district court ruled that act No. 221 was unconstitutional, and that the city of Shreveport had the right to call the election in question, and that the will of the people as registered in said election was entitled to be carried out by the issuance of licenses, as directed by them. Plaintiff prosecutes this appeal. Defendants have answered, asking that the decree be amended by reserving to them the right to sue for damages.
The issues presented in the case may be stated to be:
(1) Is act 221 of 1902 constitutional?
(2j If act 221 is constitutional in part only, is that part constitutional which deprives the municipalities of the state of the right of local option after the electors of the parish have voted not to issue licenses for the sale of intoxicating liquors? and
(3) If the act be constitutional, is it susceptible of the meaning attributed to it by the plaintiff?
The first statute of the Legislature with reference to the subject-matter under consideration was Act No. 126, 1855, p. 178, and it is entitled: “An act relative to drinking houses.” The act gave to the police juries *1035 of the several parishes, and to municipal authorities of the several towns and cities, the power to make laws and regulations for the sale or prohibition of the sale of intoxicating liquors within their respective limits; the question to be determined by a vote of the people of such subdivision of the state. Subsequently the act was embraced within the terms of Act No. 96 of 1870, generally known as the Revised Statute Laws of Louisiana, or the Revised Statutes. The act embraces 3,990 sections, and its title embraces numerous subjects and objects, one of which is “relative to drinking houses; license; penalty for keeping them without license, and their close upon days of election.” And, under the heading of “drinking houses,” is found Act No. 126 of 1855, in the sections numbered 1211 et seq. The act is also found a second time under the classification “police jury,” and the subdivision, “their powers, duties,” etc., in section 2778.
The act of 1855 is thus found in one act, together with other numerous acts of the Legislature, in the act numbered 96 of 1870. And all of these acts form one compilation of laws, adopted at one time by the Legislature. They form a complete system,, with subjects arranged in alphabetical order, sections numbered seriatim, and the general revision is known as the Revised Statutes of Louisiana.
Many different sections of the Revised Statutes refer to one subject, and those sections, taken together, cover the law on those subjects as it existed in 1870; and, the amending or re-enacting of any one section thereof clearly has the effect of placing the amended section in the place and stead of the original section, in its relation to the other sections on the same subject.
Therefore, when the Legislature in 1884 passed Act No. 76, p. 98, entitled “An act to amend and re-enact sections 1211 and 2778 of the Revised Statutes, relative to the granting or withholding licenses for the sale of intoxicating liquors,” said Act No. 76 was made a portion, or portions, of the Revised Statutes of Louisiana of the year 1870; and it took the places of sections 1211 and 2778.
Defendants do not contest the validity of said Act No. 76, or the sufficiency of the title thereof; but they contest the legality and constitutionality of the title of Act No. 221 of 1902, p. 451, which bears the same title, “An act to amend and re-enact sections 1211 and 2778 of the Revised Statutes of the state of Louisiana, relative to granting or withholding licenses for the sale of intoxicating liquors,” while plaintiffs argue that both acts are legal, constitutional, and of binding effect, except in so far as the former may be amended and repealed by the provisions of the later act.
The title of the act of 1902 has been already given. That statute follows. The provisions of the section of the Revised Statutes will be found to be in ordinary type. Clauses added by Act No. 76, 1884, will be in italics, and those added by Act 221 of 1902 will be in capitals. The changes made in the statute by the various acts may thus be readily seen:
Sec. 1211. “Be it enacted by the General Assembly of the State of Louisiana, That Sections 1211 and 2778 of the Revised Statutes of 1870 be amended and re-enacted so as to read: ‘That the police juries of the several parishes of the State, the municipal authorities of the several villages, towns and cities, and the CITY COUNCIL OF THE City of New Orleans shall have the exclusive power to make such rules and regulations for the sale or the prohibition of the sale of intoxicating liquors, as they may deem advisable, and to grant or withhold licenses from drinking houses and shops within the limits of the city, PARISH, w.ard of a parish, town OR VILLAGE, as a majority of the legal voters of any city, PARISH, ward of a parish, town OR VILLAGE, may determine by ballot, and the said ballot shall be taken whenever deemed necessary by the police juries of the several'parishes, the municipal authorities of the several towns and the City Council of the City of New Orleans, provided, said election shall not be held OFTENER than once a year, AND WHEN SO HELD THE EFFECT OF THE SAID ELECTION SHALL CONTINUE IN FORCE UNTIL ANOTHER ELECTION IN THE PARRISH, WARD OF A PARISH, CITY, TOWN OR VILLAGE IS HELD ON THE SAME *1037 QUESTION) and provided further that whenever an eleetion held under this seetion, the majority of votes east in said ward, if only a ward eleetion has teen held, or a majority of the votes east in a parish, if an eleetion has "been held for a ivhole parish, shall he against granting the licenses for the sale of intoxicating liquors, said vote or decision shall control the action of any ward, city, town, OR VILLAGE within the limits of the said ward or parish, as the case may he, as fully and completely as if said election had been held hy authority of said city, town OR VILLAGE.’ ”
[1] The first proposition submitted by defendant is that:
“The effect of the re-enacting statute of 1884 was entirely to obliterate the sections of the Revised Statutes which it re-enacted.”
Such effect is contrary to the language used in the statute of 1884, and it is contrary to the views expressed by the court in construing other statutes of the Legislature in similar connections.
The statute does not say that the sections of the Revised Statutes are obliterated; on the contrary, it says that sections 1211 and 2778, relative to the granting or withholding of licenses for the sale of intoxicating liquors, shall “be amended and re-enacted so as to read,” etc. To enact is to mate into a law. To re-enact is to enact again. So when sections 1211 and 2778 were amended and reenacted as set forth in Act 76 of 1884, that act was substituted for, and took the places of, said sections 1211 and 2778 in the Revised Statutes. Those sections were not expressly repealed by the later act. The act took the places of the sections, in their respective parts of the Revised Statutes, and were interwoven with and made dependent upon the other sections of the statute forming parts of the subject-matters covered by those sections.
In the case where the Civil Code, article 1739, was amended by an act approved March 21, 1850, in applying the law named to other articles of the Code, in connection with the original article 1739, the court say:
“The statute of 1850, consequently must be read in its place' as article 1739 of the Civil Code. It then becomes a general provision of law forming a part of the Civil Code, subject to the limitations and exceptions found in other articles of the Code not irreconcilable with the same. As it does not purport to repeal any article, it must be construed in reference to all the articles on the same subject-matter. C. C. 17.” Wood v. Stokes, 13 La. Ann. 143.
And in the case of Adams v. Day, 14 La. 505, the court’say:
“An amendment to an existing law becomes as much a part of it as though it had been embodied in the original law when it was made.”
Recently, in the case of State v. Walters, 135 La. 1070, 1081, 66 South. 364, the court say with reference to section 805, R. S., which was amended and re-enacted by Act 271, 1910, p. 470, that the section, as re-enacted, was revived, and was put back into place with its original number in the Revised Statutes. Such appears to be the interpretation given generally by the federal and state courts. Goodbar v. City, 113 Tenn. 20, 81 S. W. 1061; Ex parte Segars, 32 Tex. Cr. R. 553, 25 S. W. 26; Village of Mellrose v. Dunnebecke, 210 Ill. 422, 71 N. E. 431; U. S. v. Sapinkow (C. C.) 90 Fed. 654.
In the last-cited case the court held:
“A statute striking out the same and substituting other amended provisions therefor; becomes part of the Revised Statutes.”
In Village of Mellrose v. Dunnebecke, supra, an act containing a general revision of laws upon a certain subject was amended as to two sections by a subsequent act. These same sections were again amended, by reference to the original act. And the court, in disposing of the case, say in part:
“The act of 1901 in no manner referred to or mentioned the act of 1899 amending said section 38, and it is contended by the appellees that by the amendment of 1899 section 38 of the act of 1897 was repealed by necessary implication, as the same section in the two acts related to the same thing, and furnished a complete rule governing the matter to which it relates. It is further contended by appellees that, seetion 38 of the act of 1897 being thus repealed by the amendatory act of 1899, the attempt by the General Assembly to amend section 38 of the act of 1897 was void and ineffectual, because there was no section 38 left in the act of 1897, and there *1039 was tlierefore nothing of that section to amend in 1901; that a repealed statute cannot be amended. * * *
“The act of 1899 was entitled ‘An act to amend sections 38 and 42 of an act entitled “An act concerning local improvements,” * * * and the enacting clause provided that the sections should ‘be amended to read as follows.’ * * * That act contained no repealing clause. * * * The amendatory act of 1901 is entitled ‘An act to amend an act entitled “An act concerning local improvements,” approved June 14, 1897.’ ® * * That (1901) act contains a repealing clause, and repeals all acts and parts of acts in conflict with it.”
After citing the quotation given below from Black on Interpretation of Laws, the court say:
“The act of 1901 was a general revision of the act of 1897, and if the rule announced by Mr. Black, and supported by this court, is sound, the act of 1899 was incorporated in and became a part of the act of 1897, as it only pm-ported to change two sections of the act of 1897, but gave to the two sections, as thus changed, their original numbers; and if those two sections did become and were in 1901 a part of the act of 1897, they were properly and sufflciently referred to by their section number by the amendatory act of 1901. Furthermore, if any effect is to be given to the repealing clause of the act of 1901, then it must be said that they, with the sections therein enacted and amended, are the existing and controlling law upon that subject, or that there is no law at all upon our statute books covering it.”
Mr. Black on Interpretation of Laws, p. 434, says:
“An amendment of a statute by the subsequent act operates precisely as if the subject-matter of the amendment had been incorporated in the prior act at the time of its adoption, so far .as it regards any action after the amendment is made, for it must be remembered that an amendment becomes a part of the original act, whether it be a change of a word, figure, line, or entire section, or a recasting of the whole language.”
Act 76 of 1884, amending and re-enacting sections 1211 and 2778, R. S., became parts of the Revised Statutes, occupying the places and taking the original numbers of the sections amended and re-enacted. The original sections did not lose their place or identity, and they were not obliterated by the act of the Legislature of 1884. There are no blank spaces in the Revised Statutes of the state where sections 1211 and 2778 once stood. Those sections, as amended, formed parts of the Revised Statutes since the original sections were amended and re-enacted in 1884. And they thus appear in Wolff’s Revised Laws. The intention of the Legislature in 1884 is made very clear by the language used by it in saying:
“That sections 1211 and 2778 of the Revised Statutes of 1870 be amended and re-enacted so as to read,” etc.
The intention was to keep them in place, as amended; and the intention was not to make vacant places in the Revised Statutes, or to strike out said two sections.
The result is that when a certain section is changed, either in form or substance, a change is made, not only in the section, but also in the entire subdivision of the act; and the lawmaker, in providing the new matter, is deemed to have had drinking houses, local option, and the powers and duties of police juries and of the several sections with reference thereto, in view, and to have subjected the new provisions to their influence. When sections 1211 and 2778 were changed in phraseology and slightly in substance by the addition of cognate matter, they were still 1211 and 2778 of the Revised Statutes, and they continued to perform the former offices of those sections in their allotted relations to all the other sections of the groups of which they are integral parts.
Coming now to a consideration of Act No. 221 of 1902, p. 451, which is entitled “An act to amend and re-enact sections 1211 and 2778 of the Revised Statutes of the state of Louisiana, relative to granting or withholding licenses for the sale of intoxicating liquors,” we repeat that it is the same title as that of the act of 1884.
It has just been decided that sections Ü211 and 2778, R. S., existed in the Revised Statutes as those sections were amended by the act of 1884. Therefore the Legislature of *1041 1902 exercised the power conferred upon it by further amending said sections, without referring to the amendatory act of 1884.
[2] Even had sections 1211 and 2778 been repealed by the act of 1884, and they were not repealed — the act of the Legislature of 1902, amending and re-enacting said sections, without reference to the act of 1884, would have been legal and constitutional. This point was passed upon in the opinion of the court in State v. Walters, 135 La. 1070, 66 South. 364, in discussing section 805 of the Revised Statutes, which had been amended by Act 86 of 1908, and repealed therein, and where Act No. 271 of 1910 amended and reenacted section 805, R. S. It was there held that the repeal of section 805 did away with said section, and that it was superseded by the statute of 1908, and that as amended by Act of 1910, § 805, was re-enacted, revived, and put back into place with its original number in the Revised Statutes. And this was so held although the act of 1908 was not mentioned in the title of the act of 1910.
it was there argued that the statute of 1910 was invalid because it was an attempt to amend a statute which had been amended and re-enacted; and the court held that:
“Article 31 of the Constitution does not — nor does any other provision in the Constitution— deny the right of the General Assembly to amend and re-enact, to revive and at the same time amend, a repealed law. * * * Under the doctrine that an amending act — and especially an amending and re-enacting statute — absorbs and supercedes the amending .act, there ought to he no objection to amending a repealed law in the same act by which it is re-enacted. This simple and convenient method of law making is not only not forbidden by our Constitution, but seems to be suggested, if not expressly authorized, in article 32, which provides: ‘No law shall be revived, or .amended by reference to its title, but in such cases the act revived, or section as amended, shall be re-enacted and published at length.’ ”
It was further held that “revived” was synonymous with “re-enacted,” and to revive an act is to re-enact it, and that the act revived, covered by the terms of article 32 of the Constitution, referred only to an act which has been repealed, and that the requirements that the act revived shall be reenacted and published at length assumed that it might be re-enacted in an amended form. Therein are reviewed the cases of Mouton v. City of Lafayette, 130 La. 1064, 58 South. 883, State v. Cognevich, 124 La. 414, 50 South. 439, and State v. Nelson, 135 La. 678, 65 South. 893, which cases involved the amending and re-enacting of statutes, or sections of statutes, and not articles of the Codes or of the Revised Statutes.
The ease of State v. Long, 132 La. 170, 61 South. 154, is also reviewed, and in so far as it may be inconsistent with the views expressed in the Walters Case, it was considered to be overruled.
The court proceeds to say in the Walters Case:
“We have not been referred to, nor have we found, a decision holding that a repealed statute cannot be amended in the same act in which it is re-enacted, under a constitutional provision corresponding with article 32 of the Constitution of this state. And it is now our deliberate opinion and judgment that the Legislature of this state has the authority to make such amendments, in re-enacting or revising a repealed law or a law that has been declared unconstitutional, as relate to the subject or object of the original statute, provided this object be expressed in the title of the amending and re-enacting statute.”
Sections 1211 and 2778, R. S., therefore, as amended by the acts of 1884 and 1902, have not been obliterated from the Revised Statutes; but they, as amended and re-enacted, form parts of the Revised Statutes.
The requirements of articles 31 and 32 of the Constitution were met by the Legislature when it expressed in the title of the act of 1902 that it was intended to amend sections 1211 and 2778 of the Revised Statutes, and where, in the body of the act, it reviewed the sections, or the sections as they had been amended, and re-enacted and published them at length.
In the Mouton Case, 130 La. 1064, 58 South. 883, and the Nelson Case, 135 La. 689, 65 *1043 South. 893, the questions were as to the sufficiency of the title of acts which purported to amend and re-enact former acts, which in turn had been repealed in the amending acts. The law, as stated in those opinions, did not refer to articles or sections of the Codes, or to a system or compilation of laws, with sections numbered seriatim, which sections were related to other sections in the same Code or revision.
Defendant next contends that the title to the act of 1902, which is,'“An act to amend and re-enact sections 1211 and 2778 of the Revised Statutes of the state of Louisiana relative to granting or withholding licenses for the sale of intoxicating liquors,” is simply descriptive of the sections referred to, and therefore is no more of a title than if it had been “An act to amend and re-enact section 1211 of the Revised Statutes.”
If the act of 1902 bore the title last mentioned it would have been sufficient. It would have expressed the object of the act to be to amend and re-enact the( sections named. But the title goes beyond what is necessary, and states that it is “An act * * * relative to granting or withholding licenses for the sale of intoxicating liquors.” Either title would have been sufficient in law. The title to the original act was “An act relative to drinking houses.” No. 126, 1855, p. 178. The title to the second act, or rather a part of the title to the second act, No. 96, 1870, was “relative to drinking houses; license; penalty for keeping them without license; and their close upon days of election.” And the title to the two last acts, 1884 and 1902, were to amend and re-enact sections 1211 and 2778, R. S., “relative to granting or withholding licenses for the sale of intoxicating liquors.” Defendant argues that the words “relative to,” etc., referred to the sections 1211 and 2778, and not to the act of granting or withholding licenses- for the sale of intoxicating liquors, and cites the decision of this court in the case of State v. Mauvezin, 136 La. 746, 67 South. 816.
The words “relative to” clearly mean, as contended by defendant, that the amendatory act relates to the sections of the Revised Statutes named and to be amended, which sections relate or refer to the granting or withholding of licenses for the sale of intoxicating liquors. And, as the act of 1902 was an act to amend certain sections of the Revised Statutes having relation to, or relative to, the granting or withholding of licenses for the sale of intoxicating liquors, the object of the act is clearly expressed in the title, and the requirements of the Constitution are fully met.
[4] The last point urged by defendants is that if Act 221 of 1902 is otherwise constitutional, yet that portion of the act which denies to the city of Shreveport the right to vote upon the subject of licenses, independently of the parish, is beyond the object expressed in the title, and therefore void.
Defendants argue that the statute prior to 1902 accorded to the municipalities in the several parishes the right to vote upon the question of granting or withholding licenses for the sale of intoxicating liquors within said municipalities, and that this right has been taken away by the act of 1902, without due notice being given in the title to the act.
[3,5] “An act * * * relative to the granting or withholding of licenses for the sale' of intoxicating liquors” is certainly broad enough in its terms to cover, as the language of the act does cover, a parish, ward of a parish, city, town, or village; and, unless it is made clear that the legislative act has gone beyond some recognized principle in thus grouping the several subdivisions of the state, the act will be held to conform to the requirement of embracing but one object in its title and body.
“It has been said by an eminent jurist that when courts are called upon to pronounce the *1045 invalidity of an act of the Legislature, passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient care can throw any new light upon the subject, and never dedare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action and the act be sustained.” Cooley’s Constitutional Limitations (7th Ed.) 252.
"It is but a decent respect, due to the wisdom, integrity, and patriotism of the legislative body by which any law is passed, to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt.” Id. 254.
And in Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162, Chief Justice Marshall said:
“It is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.”
The court fail to see that the Legislature has transcended its powers in the act of 1902 in making a law relative to granting or withholding licenses for the sale of intoxicating liquors applicable alike to the parish, and to the wards, cities, towns, and villages in a parish, and in providing that when an election shall have been held on the subject of granting or withholding licenses that a majority of the votes cast in a parish on the question shall control the action of the parish, wards, cities, towns, and villages, within the limits of said parish.
This same statute was before the court for interpretation in the ease of Police Jury v. Mansura, 119 La. 300, 44 South. 25, and, while the point was not therein urged in the same way in which it is here presented, the court recognized and held that the Legislature had given the control of this matter of granting or withholding licenses to the parishes, which had the effect of controlling municipal action therein.
In the former cases of Garret v. Mayor, 47 La. Ann. 618, 17 South. 238, Police Jury v. Mansfield, 49 La. Ann. 796, 21 South. 598, and Police Jury v. Descant, 105 La. 512, 29 South. 976, the same point was under discussion, and the court said [in the Garret Case], with reference to the limitation or restriction in the act of 1884:
“This case does not, in our conception, involve in any manner the liberties or immunities of citizens. It only involves the constitutional power of the Legislature to declare that the vote or decision of the people of a parish shall control the sale of spirituous liquors in a town within its limits.
“And substantially the only reason assigned why it has not that power is that by prior statutes the town was, for all political purposes, made free and independent of the parish in that respect.
“Recognizing the right of the people to govern and control the sale of intoxicating liquors within any given subdivision of the state, we can see no legal reason for hampering or restraining that right. The General Assembly is the sole and exclusive judge of the time and manner in which the police power of the state shall be exerted, and its action must be liberally construed.”
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there be judgment in favor of plaintiff and against defendants, enjoining the mayor and city council of the city of Shreveport from issuing licenses for the sale of intoxicating liquors, in said city, with costs.