343 So.2d 325 (1977)
In re COILE.
No. 13147.
Court of Appeal of Louisiana, Second Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.
Writ Refused May 26, 1977.
*326 Ford E. Stinson, Benton, for appellant.
Campbell, Campbell & Johnson by John T. Campbell, Minden, for appellee.
Before PRICE HALL and JONES, JJ.
En Banc. Rehearing Denied March 21, 1977.
JONES, Judge.
The stepfather of a four-year-old child petitioned to adopt the child without the consent of her natural father under the provisions of LSA-R.S. 9:422.1.[1] The adoption was opposed by the child's natural father. The trial court granted the adoption and the natural father appeals. We affirm.
The child was born of a marriage which was dissolved by a judgment of divorce on October 15, 1974, in which the mother was granted custody of the child and the child's father was ordered to pay $87.50 per month child support. Petitioner and the child's mother were married June 5, 1975.
In the first days of 1976 the natural father became aware that his former wife's new husband (petitioner) intended to adopt his minor daughter. The natural father had made no payment of child support during the year 1975 and he learned that his failure to support his daughter for this period of one year made it possible for her to be adopted by her stepfather without his consent. Upon obtaining this information the natural father immediately sent to his former wife a child support payment for the month of January, 1976 and continued to send these payments up through May, 1976, the month in which the adoption hearing was held.
The mother accepted the January letter containing the child support for that month but did not cash the check. She refused to accept the subsequent letters containing the child support for the following months. The natural father had his attorney write a letter to the stepfather's attorney offering to pay all past due child support payments if the stepfather would discontinue his plans to adopt the child, which offer was rejected. On February 12, 1976 these adoption proceedings were formally filed *327 and were opposed by the natural father of the child.
On appeal the natural father urges that the decision of the trial court should be reversed for the following reasons:
(1) The child's mother had agreed he could be relieved from the payment of child support and therefore his non-payment was justified;
(2) He was financially unable to make the child support payments;
(3) That he had commenced child support payments prior to institution of the adoption proceeding and had offered to pay all past due payments;
(4) That Act 106 of 1962 which amended and re-enacted R.S. 9:422.1 which provides for adoption without the father's consent was unconstitutional for the following reasons:
(a) The title to the Act was not broad enough to encompass the content of the Act;
(b) The statute violates constitutional prohibition of the abolition of forced heirship;
(c) The act permitted deprival of parental rights without due process.
The mother of the child denied that she agreed the child's father could withhold payment of the child support. The testimony of appellant was that his former wife had agreed to permit him to withhold payment of "a couple of months" child support during the spring of 1975 and was to catch up on these payments during the summer. He stated that following his former wife's marriage to petitioner in June, 1975, he became angry with her and refused to make child support payments. It is apparent his explanation to the effect he failed to make payments based upon an agreement with his former wife is totally without merit.
Appellant's argument that he was financially unable to make the payments is likewise without merit. During 1975 he purchased an expensive car on which he made several $168 monthly installments. The evidence also shows the natural father's business expenses were substantially reduced during the summer of 1975. Funds used to pay these car notes or saved by reduction of business expenses could have been used to pay his child support obligation.
Neither the natural father's mailing of checks in payment of child support in January, 1976 and the months that followed, nor his tender through his attorney of past due child support, will change the legal effect of his having failed to make these monthly child support payments for the full twelve months of 1975. Once he failed to make the payments for one year his consent was no longer essential to the adoption of his daughter by her stepfather under the terms of R.S. 9:422.1. A similar attempt to evade the provisions of R.S. 9:422.1, by tendering past due child support after nonpayment for more than a year, was made in In Re Lafitte, 247 La. 856, 174 So.2d 804 (1965). The court there rejected the natural father's argument in the following language:
"Hutchinson's claim he should not be deprived of his parental rights for failing to make payments during this 14-month period because he tendered payment of all past due alimony prior to the institution of the instant proceeding, and particularly since his former wife never protested his failure to promptly pay alimony support for his children, is without merit, and not supported by the evidence.
"We think, as did our learned brother below, that "If it were possible to pay up an arrearage in the twelfth month of each year and thereby defeat each effort of the adoptive step-parent to adopt children he is attempting to be a father to, the intent of the legislature in adopting R.S. 9:442.1 would surely be defeated.' (The emphasis has been supplied.)"
We have carefully considered each of appellant's arguments on the unconstitutionality of R.S. 9:422.1 and find no basis for them, either under the constitutional provisions cited or in the jurisprudence.
With regard to appellant's contention that the 1962 Act was broader than its title and that it includes more than one object, it *328 is significant to point out that LSA-R.S. 9:422.1 was first added by Act 501 of 1958. It was thereafter amended by Act 268 of 1960 and by Act 106 of 1962. Appellant complains particularly of the title of Act 106 of 1962, which reads as follows:
"To amend and re-enact Section 422.1 of Title 9 of the Louisiana Revised Statutes of 1950, relative to the adoptions of children by step-parent or grandparent without the consent of one of the legitimate parents."
The constitutional provisions which appellant contends was violated reads as follows:
"Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.
"The Legislature may, however, by means of a single statute, enact or revise a system of laws of a general or public nature, such as the general statutes, or a codification of laws on the same general subject matter, or both. Such a statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute. (As amended Acts 1948, No. 528, adopted Nov. 2, 1948.)"
Louisiana Constitution of 1921, Art. 3, Section 16.
The title to Act 106 of 1962 clearly meets the requirement of the above quoted section of the 1921 Constitution. The provision of this section which eliminates the requirement of appellant's consent, was enacted prior to Act 106 of 1962. This act merely added additional provisions whereby consent of the noncustodial parent is not required and which have no application to the instant case. The title of the Act provides the section is merely ". . . amended and re-enacted. . . ." In State v. Clayton, 233 La. 972, 99 So.2d 312 (1957), the court stated:
"* * * At the outset, it is to be observed that it is well settled in this State that, whenever a law or article or section of a code of laws or revised statutes is amended, its title satisfies the requirement of Section 16 of Article 3 of the Constitution by merely stating that it is an act to amend and reenact the particular law or section of the code of laws amended, as such a title clearly indicates the object of the Act . . ." (Citations omitted)
The appellant's contention that the cited section of the adoption statute violates the constitutional prohibition against abolishment of forced heirship is also without merit. Article 4, Section 16 of the Louisiana Constitution of 1921 specifically provided for the effect of adoptions upon forced heirship in the following language:
"* * * No law shall be passed abolishing forced heirship but the legitime may be placed in trust to the extent authorized by the Legislature. Children lawfully adopted shall become forced heirs to the same extent as if born to the adopter and shall retain their rights as heirs of their blood relatives, but their blood relatives shall have their rights of inheritance from these children terminated."
Section 5 of Article 12 of the 1974 Constitution, while providing that no law shall abolish forced heirship provides that the rules regulating forced heirship and disinherison shall be established by law.[2]
The effect of the adoption statute upon the right of the natural father to inherit from his natural child falls directly within the framework of the provisions of the 1921 and 1974 Constitutions dealing with forced heirship and does not violate the provisions of either constitution.
Appellant's final contention is the cited statute is unconstitutional for the reason he is being deprived of his parental rights without due process. In Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829 (1943), *329 the court, in discussing the basic requirements of due process, pointed out:
"The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case.. . ." Id. p. 833
Our adoption law clearly meets these requirements of due process. The appellant was served a copy of the adoption petition herein and given every opportunity to oppose it. There has been no showing made that appellant was denied due process of law.
For the reasons assigned, the trial court's judgment is affirmed at appellant's cost.
NOTES
[1] "If the spouse of the petitioner is the legitimate parent of the child . . . then the consent of the other legitimate parent is not necessary if . . ..

"(1) The spouse of the petitioner . . . [has] been granted custody of the child by a court of competent jurisdiction and
"(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year . . .."
[2] Louisiana Constitution of 1974, Article 12, Section 5 provides:

"§ 5. Forced Heirship and Trusts
Section 5. No law shall abolish forced heirship. The determination of forced heirs, the amount of the forced portion, and the grounds for disinherison shall be provided by law. Trusts may be authorized by law, and a forced portion may be placed in trust."